Kelly Diane EDWARDS, Appellant

v.

The STATE of Texas, Appellee

No. 11–13–00364–CR

Court of Appeals of Texas,
Eastland.

Opinion filed March 17, 2016

Jeffrey A. Propst, Keith & Probst, PLLC, Abilene, for Appellant.

James Eidson, District Attorney, Britt Lindsey, Assistant, Criminal District Attorney's Office, Abilene, for Appellee.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

### JOHN M. BAILEY, JUSTICE

Kelly Diane Edwards was indicted for the offense of intentionally and knowingly attempting to possess a controlled substance by "misrepresentation, fraud, forgery, deception and subterfuge." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.129(a)(5)(A) (West Supp.2015). The jury convicted Appellant of the offense. The trial court assessed a fine of $500 and sentenced her to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of seven years, but the trial court probated the confinement portion of the sentence and placed Appellant on community supervision for seven years. In three issues on appeal, she asserts that (1) the evidence was insufficient to support her conviction, (2) the trial court erred by failing to include the essential elements of the attempted offense in the jury charge, and (3) her trial counsel rendered ineffective assistance of counsel. We affirm.

### Background Facts

At 4:20 p.m. on January 20, 2012, Paul Dwight Davenport, a pharmacist at the H.E.B. grocery store in Abilene, received a message on the pharmacy's prescription phone-in system. The call purported to be from someone named "Lisa" at Dr. Brad Kendrick's office. The caller requested a prescription of thirty tablets of "Norco 10" for Appellant. Davenport testified that Norco 10 is a combination of hydrocodone and acetaminophen and that it is a Schedule III controlled substance.

Davenport suspected that the prescription was fraudulent because relevant information required to fill the prescription was missing and it was unusual for a prescription to be called in so late on a Friday because most doctor's offices in Abilene are closed on Friday afternoons. Lastly, Davenport noticed that the call did not come from a doctor's office based on the caller ID information. He cross-checked the phone number on the caller ID with the pharmacy computer system and found that the phone number belonged to Appellant, confirming his suspicion that the prescription was fraudulent.

Davenport contacted Agent David Gray with the Abilene Police Department. Agent Gray came to the pharmacy the following Monday and made a recording of the message left by Appellant. He then spoke with Lisa Villarreal in Dr. Kendrick's office. She confirmed that Appellant was Dr. Kendrick's patient. Villarreal later listened to a recording of the message left at the pharmacy. She identified Appellant as the caller.

Agent Gray subsequently called Appellant several times attempting to arrange for her to come to the Law Enforcement Center to talk about the matter. He reached her at the same phone number from which the call to the pharmacy had

come. However, a meeting with Appellant never occurred.

Villarreal testified that she is a medical assistant for Dr. Kendrick, a surgeon. She is the person in his office that usually calls in prescriptions for his patients to pharmacies. Villarreal testified that Appellant was a patient of Dr. Kendrick and that Appellant had surgery on December 29, 2011. Villarreal stated that Dr. Kendrick prescribed pain medication for Appellant after the surgery and that she had multiple phone conversations with Appellant about pain medication between the date of the surgery and January 20, 2012. Most of these phone conversations involved Appellant requesting more pain medication. Villarreal testified that Appellant called her three times on January 20, 2012, requesting more pain medication. Villarreal told Appellant that Dr. Kendrick would not be giving her any more medication until January 23, 2012, when Appellant had an appointment to see him. Villarreal also testified that she was familiar with Appellant's voice and that she identified the caller as Appellant on the recording that Agent Gray played for her.

### Analysis

In her first issue, Appellant challenges the sufficiency of the evidence supporting her conviction. Appellant bases her evidentiary contention on the Texas Penal Code's "Criminal Attempt" statute. TEX. PENAL CODE ANN. § 15.01 (West 2011). Section 15.01(a) provides that "[a] person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a). Appellant bases all three of her issues on Section 15.01(a). She alleges in her first issue that the sufficiency of the evidence should be assessed under the

standard set out in Section 15.01(a). In her second issue, she contends that the trial court should have included the elements of Section 15.01(a) in the court's charge. Appellant alleges in her third issue that her trial counsel was ineffective for failing to request the trial court to include the elements of Section 15.01(a) in the court's charge.

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App.2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex.App.–Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim. App.2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim.App.2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S.

at 326, 99 S.Ct. 2781; *Clayton*, 235 S.W.3d at 778.

The indictment charged Appellant in the following manner:

> KELLY DIANE EDWARDS did then and there intentionally and knowingly attempt to possess a controlled substance, to-wit: Hydrocodone listed in Schedule III by the misrepresentation, fraud, forgery, deception and subterfuge; in that the said KELLY DIANE EDWARDS did then and there call in a prescription by telephone to Paul Davenport knowing the prescription was not valid.

The indictment tracked Section 481.129(a)(5), which provides that "[a] person commits an offense if the person knowingly . . . possesses, obtains, or attempts to possess or obtain a controlled substance or an increased quantity of a controlled substance . . . by misrepresentation, fraud, forgery, deception, or subterfuge." HEALTH & SAFETY § 481.129(a)(5)(A). Appellant directs her evidentiary challenge on the element of "attempt to possess" as contained within Section 481.129(a)(5) and alleged in the indictment. She contends that there is no evidence that she attempted to possess a controlled substance because there is no evidence that she engaged in an act "that tended to effectuate possession." She points out that there is no evidence that either she or anyone else attempted to pick up the prescription from the pharmacy after the call was placed to the pharmacy. In advancing this contention, Appellant is essentially asserting that the State was required to prove conduct on her part, in addition to the act alleged in the indictment, in order to establish an "attempt to possess" the controlled substance. We disagree with Appellant's analysis.

■ We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* Section 15.01 provides a means to distinguish between attempted offenses and completed offenses. *Parfait v. State*, 120 S.W.3d 348, 350 (Tex.Crim.App.2003). By definition, an attempt offense under Section 15.01 is a preparatory, inchoate offense that "tends *but fails to effect* the commission of the offense intended." PENAL § 15.01(a) (emphasis added). "Attempt" offenses prosecuted under Section 15.01 receive a different punishment than those for offenses under other sections of the Penal Code— "one category lower than the offense attempted." *Parfait*, 120 S.W.3d at 351 (quoting PENAL § 15.01(d)).

■ In contrast, Section 481.129(a)(5) includes as enumerated offenses both possessing and attempting to possess a controlled substance by fraudulent means. HEALTH & SAFETY § 481.129(a)(5). An attempt to possess is a completed offense under Section 481.129(a)(5) and it carries the same penalty as actually possessing a controlled substance by fraudulent means. *See id.* § 481.129(d) (punishment is determined by the classification of the controlled substance that the actor possesses or attempts to possess rather than on whether or not the actor is successful in obtaining possession). Because Section 481.129(a)(5) specifically provides for the offense of attempted possession as a completed offense, it is not necessary to invoke the criminal attempt language found in Section 15.01 to charge or convict a person

with attempting to possess a controlled substance by fraudulent means.

■ Even though Section 15.01 does not apply to an "attempt to possess" charge brought under Section 481.129(a)(5), Appellant contends that Section 15.01(a) sets out a statutory definition for "attempt" that we must use in evaluating the sufficiency of the evidence. "[W]hen determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim.App.1992). "Conversely, 'terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning,' are 'considered as having been used in their technical sense.'" *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex.Crim.App.2012) (quoting *Medford v. State*, 13 S.W.3d 769, 772 (Tex.Crim. App.2000)).

In reliance upon Section 15.01(a), Appellant contends that the evidence is insufficient because her conduct did not show an act beyond mere preparation that established that she had a specific intent to commit the offense of possession. In advancing this argument, Appellant contends that the facts in this case are comparable to a scenario outlined in *Gibbons v. State* wherein the Court of Criminal Appeals indicated that a person who buys a gun and enters a bank for the purpose of robbing it would not be guilty of attempted robbery if he saw a policeman inside the bank causing him to change his mind and leave the bank. 634 S.W.2d 700, 705–06 (Tex.Crim.App. [Panel Op.] 1982). Assuming that the elements of Section 15.01(a) are applicable to our evidentiary review,

we disagree with Appellant's analysis of the evidence.

■ With respect to intent, Appellant contends that her conduct did not establish an intent to commit the offense of possession. We disagree. Intent can be inferred from the acts, words, and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App.1995) (citing *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim.App. [Panel Op.] 1980)). Placing a call to a pharmacy while posing as a medical assistant from a doctor's office and requesting a prescription for a controlled substance evidences an intent to possess the controlled substance.

We also disagree with Appellant's contention that her conduct did not show an act beyond mere preparation. Appellant was charged under Section 481.129(a)(5)(A) with attempting to possess a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge. The Court of Criminal Appeals has described the language of Section 481.129(a)(5)(A) as "broad" and "overlapping" in nature with respect to the more specific provisions set out in Section 481.129(a)(5)(B) and (a)(5)(C). *Avery v. State*, 359 S.W.3d 230, 236 (Tex.Crim.App. 2012). "The language in subsection (A) ... would seem to encompass virtually every action that would fall under subsections (B) or (C)." *Id.* A person commits an offense under Section 481.129(a)(5)(C) if he knowingly attempts to possess a controlled substance "through use of a fraudulent oral or telephonically communicated prescription." HEALTH & SAFETY § 481.129(a)(5)(C). The evidence shows that Appellant engaged in conduct prohibited by subsection (C). "Conduct constitutes an offense if it is defined as an offense by statute." *Oler v. State*, 998 S.W.2d 363, 367 (Tex.App.–Dallas 1999, pet. ref'd) (citing PENAL § 1.03(a)). Thus,

Appellant's conduct constituted an act that was beyond mere preparation—her conduct constituted a completed offense under the statute.

In the context of the example of the would-be bank robber discussed in *Gibbons,* Appellant did more than enter a bank with a gun. She communicated her attempt to obtain a prescription to the pharmacy much like the would-be bank robber might hand a note to a bank teller asking for money. Her conduct effected the offense intended. As applied to this case, the "offense intended" by Section 481.129(a)(5)(A) is an attempt to possess a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge. *See id.* ("The gravamen of the offense with which appellant was charged is possessing and attempting to possess a controlled substance." (citing *Bush v. State,* 628 S.W.2d 270, 273 (Tex.App.–Amarillo 1982, pet. ref'd))). Viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found that Appellant attempted to possess a controlled substance by fraudulent means. We overrule Appellant's first issue.

◼ In her second issue, Appellant contends that the provisions of Section 15.01(a) were essential elements and that their omission from the court's charge permitted the jury to convict her on less than proof beyond a reasonable doubt of every element of the offense. We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1985).

◼ The trial court is required to "deliver to the jury ... a written charge distinctly setting forth the law applicable to the case [and] not expressing any opinion as to the weight of the evidence." Tex.Code Crim. Proc. Ann. art. 36.14 (West 2007). By its express terms, Section 15.01(a) is not applicable to an attempt to possess a controlled substance by fraudulent means under Section 481.129(a)(5)(A) because it applies to situations where the actor's conduct "fails to effect the commission of the offense intended." *Compare* Penal § 15.01(a) (failing to complete the offense is an attempt), *with* Health & Safety § 481.129(a)(5) (attempt is included in the offense). As noted previously, an "attempt to possess" is an intended offense under Section 481.129(a)(5), and it is therefore a completed offense under the Health and Safety Code. Health & Safety § 481.129(a)(5). Therefore, the provisions of Section 15.01(a) are not essential elements of an offense under Section 481.129(a)(5). It follows that the trial court was not required to instruct the jury on "criminal attempt" as set forth in Section 15.01(a).

◼ Appellant additionally contends that Section 15.01(a) sets out a statutory definition for the word "attempt" that the trial court should have included in the court's charge. We disagree with her reading of this provision. Rather than defining the word "attempt" for all purposes, Section 15.01(a) sets out the requirements for convicting a person of "criminal attempt" when he attempts to commit an offense and his conduct "fails to effect the commission of the offense intended." Penal § 15.01(a). To the extent Section 15.01(a) sets out a definition of "attempt," we conclude that it only applies when a conviction is sought under Section 15.01.

The Health and Safety Code does not define the term "attempt." *See* Health &

SAFETY § 481.002. Furthermore, "attempt" is not defined in the "definitions" section of the Texas Penal Code. *See* PENAL § 1.07 (West Supp.2015). In the absence of a definition for the term "attempt" in the court's charge, we presume that the jury applied the common meaning of the term. *See Vernon*, 841 S.W.2d at 409. The dictionary defines "attempt" as "to make an effort to do, accomplish, solve, or effect." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 79 (11th Ed.2004). If one applies the common meaning of the term to the facts in this case, the relevant inquiry is: Did Appellant knowingly *make an effort to* possess a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge by calling in a prescription by telephone to Paul Davenport knowing the prescription was not valid? A person that engages in this conduct has committed a completed offense under Section 481.129(a)(5)(A). The additional element contained in Section 15.01(a) of doing "an act amounting to more than mere preparation" is inapplicable to a charge of attempted possession under Section 481.129(a)(5)(A) because the actor has effected the commission of the offense intended. Accordingly, the trial court did not err in not including the elements of Section 15.01(a) as a definition of "attempt" in the court's charge. Finding no error in the jury charge, we need not conduct a harm analysis. *Almanza*, 686 S.W.2d at 157. Appellant's second issue is overruled.

In her third issue, Appellant asserts that she received ineffective assistance of counsel at trial. She contends that her trial counsel was ineffective for failing to either request the elements of Section 15.01 to be included in the court's charge or object to their omission. To determine whether Appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex.Crim. App.2005); *Thompson v. State*, 9 S.W.3d 808 (Tex.Crim.App.1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim.App.2003). If trial counsel did not

have an opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001).

We note at the outset of our analysis that Appellant filed a motion for new trial alleging ineffective assistance of counsel. While there was a hearing on Appellant's motion for new trial, neither the written motion nor the hearing addressed why trial counsel did not object to the jury charge. Regardless, counsel's objections or requested instructions would have been futile. As we discussed above, there was no error in the jury charge, and trial counsel was not required to make a futile objection. *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex.Crim.App.2005) ("[A] reasonably competent counsel need not perform a useless or futile act, such as requesting a jury instruction to which the defendant is not legally entitled or for which the defendant has not offered legally sufficient evidence to establish."). We overrule Appellant's third issue.

### This Court's Ruling

We affirm the judgment of the trial court.